PAUL ALAN LEVY
plevy@citizen.org
(*pro hac vice* application to be filed)
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, D.C. 20009
Telephone: (202) 588-7725

PHILLIP R. MALONE (SBN 163969)
pmalone@stanford.edu
JUELSGAARD INTELLECTUAL PROPERTY
AND INNOVATION CLINIC
Mills Legal Clinic at Stanford Law School
Crown Quadrangle, 559 Nathan Abbott Way
Stanford, California 94305
Telephone: (650) 724-1900

COREY A. DONALDSON (SBN 280383)
cdonaldson@fcoplaw.com
FERGUSON CASE ORR PATERSON LLP
1050 South Kimball Road
Ventura, California 93004
Telephone: (805) 659-6800

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### (Southern Division)

| | |
|---|---|
| JOHN UNDERWOOD, | ) |
| | ) **Civil Action No. 8:25-cv-207** |
| Plaintiff, | ) |
| v. | ) **COMPLAINT FOR** |
| | ) **DECLARATORY** |
| JULIEN COALLIER, | ) **RELIEF AND DAMAGES** |
| | ) |
| Defendant, | ) |
| | ) **DEMAND FOR JURY TRIAL** |

COMPLAINT

# INTRODUCTION

1. Pursuant to the Copyright Act (17 U.S.C. §§ 101 et seq.) and 28 U.S.C. §§ 1331 and 1338, this action for declaratory relief and damages is brought against defendant Julien Coallier. It arises from unfounded assertions of copyright infringement made by defendant against plaintiff John Underwood for videos of Shakespeare performances that Underwood posted to YouTube.

2. In 2012, defendant registered a copyright for what he claimed were "translations" of the plays of William Shakespeare. In 2024, defendant sent copyright takedown notices to YouTube for two videos of Shakespeare performances posted by Underwood. Defendant also sent legal threats to Underwood. In emails between the parties, defendant made extraordinary claims, including that he "own[ed] rights over all [Shakespeare] plays" and that "any claim Shakespeare is public domain is false as fact."

3. In 2013 and 2017, Underwood made audio and video recordings of performances by the California nonprofit Shakespeare by the Sea company, with its permission, of the Shakespeare plays *All's Well That Ends Well* and *The Taming of the Shrew*. Underwood posted the recordings to his personal YouTube channel. Over the past several years, he has posted 19 distinct recordings of performances of Shakespeare by the Sea plays to his channel, all with the permission of Shakespeare by the Sea.

4. On February 19, 2024, defendant submitted a takedown notice to YouTube under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(c), claiming that Underwood's 2013 and 2017 recordings of *All's Well That Ends Well* and *The Taming of the Shrew*, along with scores of other Shakespeare recordings by different people on different YouTube channels, infringed his copyright in his "translations" of Shakespearean dramas. In ensuing correspondence with Underwood and his colleague Jeffrey Whitten, defendant contended that posting any other recordings of Shakespeare performances on YouTube would similarly infringe his copyright.

5. Shakespeare by the Sea did not copy defendant's work. On information and belief, Shakespeare by the Sea created the scripts for its performances by working from

the original versions of Shakespeare's plays or from various non-copyrighted modern editions, all of which are in the public domain. Shakespeare by the Sea has also been performing *The Taming of the Shrew* since at least 1999, well before defendant registered his copyright. Hence, the recordings of Shakespeare by the Sea performances that Underwood posted do not infringe defendant's purported copyright, even assuming that such copyright is valid.

6. Underwood now asks the Court for a judgment declaring that he is not liable for copyright infringement, and for damages for defendant's misrepresentation of copyright claims pursuant to Section 512(f) of the DMCA.

**PARTIES**

7. Plaintiff John Underwood is an individual who lives in Los Alamitos, California.

8. On information and belief, defendant Julien Coallier is an individual who lives in Flin Flon, Manitoba in Canada.

**JURISDICTION AND VENUE**

9. A definite, substantial, and concrete controversy exists within this Court's jurisdiction between the parties concerning Underwood's and defendant's rights under the United States Copyright Act of 1976, 17 U.S.C. §§ 101 et seq. Defendant filed a DMCA takedown notice charging Underwood with infringing his copyright, and he repeated that charge in subsequent correspondence, contending that defendant is entitled to a five percent royalty on all Shakespeare performances.

10. This action for declaratory judgment arises under the Copyright Act and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

11. This action for misrepresentation of copyright claims arises under 17 U.S.C. § 512(f).

12. This Court has original jurisdiction over the subject matter of this action pursuant to the Copyright Act (17 U.S.C. §§ 101 et seq.) and 28 U.S.C. §§ 1331 and 1338.

13. This Court has personal jurisdiction over the defendant because he purposefully directed his activities into California by submitting a DMCA takedown notice to YouTube in California, demanding the removal of recordings of Shakespeare plays performed in California, and directing emails claiming ownership of Shakespeare's plays and alleging infringement by Underwood to Underwood in California. Those recordings were uploaded to YouTube by Underwood from Orange County, California, where he lives and hosts his YouTube channel. Defendant also suggested to Underwood that other recordings of Shakespeare plays hosted on Underwood's California-based YouTube channel currently or in the future would also infringe defendant's claimed copyright.

14. Venue is proper in this Court at least under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the cause of action—namely, the alleged infringement of defendant's copyright, the impact of defendant's wrongful takedown notice, and the receipt of defendant's claims of ownership of Shakespeare's plays—occurred in this district. Venue is also proper in this Court under 28 U.S.C. § 1391(c)(3) because defendant does not reside in the United States.

**FACTUAL BACKGROUND**

15. From his home in Los Alamitos, California, plaintiff Underwood operates a YouTube channel called LOSALTVSTUDIO1, which carries local government and public access programming of interest to communities in southern California, particularly in Orange and Los Angeles Counties.

16. Among the programs that Underwood has placed on his YouTube channels are audio and video recordings of live performances of William Shakespeare plays by the local nonprofit theater company Shakespeare by the Sea. Underwood made the recordings with the permission of Shakespeare by the Sea and posted them to YouTube with the theater company's permission.

17. Prior to the controversy at issue, Underwood's YouTube channel carried 19 separate recordings of Shakespeare performances. None of the videos are monetized. Instead, the recordings have been widely viewed for free in the community and have served as a valuable educational tool for local teachers and students.

18. Among other recordings, Underwood posted a 2013 recording of Shakespeare by the Sea's performance of *All's Well That Ends Well* and a 2017 recording of Shakespeare by the Sea's performance of *The Taming of the Shrew* (the "Shakespeare Play Recordings").

19. In 2012, defendant registered with the United States Copyright Office a set of Shakespeare plays that he claimed were "[t]ranslated from poem formation to play formation." That registration is attached as Exhibit A.

20. On February 19, 2024, defendant sent a takedown notice pursuant to DMCA Section 512(c) to YouTube at its headquarters in Mountain View, California. Defendant asserted that 50 videos posted to YouTube, including the Shakespeare Play Recordings, infringed defendant's copyright in the complete plays of William Shakespeare.

21. In his notice, defendant claimed that his copyright extends to "[a]ll Shakespeare [p]lays." He professed a "good faith belief, backed by government copyrights, that the material in the manner complained is not authorized by the copyright owner, its agent, or the law, since 2012" and that "[t]he information in the notification is accurate. And I swear under penalty of perjury, that I am, or am authorized to action behalf of, the owner of an exclusive right that is infringed." That notification is attached as Exhibit B.

22. On February 20, 2024, in response to defendant's February 19 DMCA notice of alleged infringement, YouTube notified Underwood that it had removed from his channel the two videos whose takedown defendant had demanded, and that his channel was now subject to a copyright "strike." This notice is attached as Exhibit C.

23. On March 10, 2024, Underwood submitted a counter notice to YouTube pursuant to 17 U.S.C. § 512(g)(3), asserting that his videos did not infringe any valid copyright.

24. Pursuant to 17 U.S.C. § 512(g)(2), a service provider receiving a counter notice is instructed to promptly provide the person who provided the original notice of alleged infringement with a copy of the counter notice, and inform that person that it will replace or cease disabling the material unless it receives notice that the person filed an action seeking a court order to restrain the alleged infringer from engaging in the alleged infringing activity.

25. Notwithstanding 17 U.S.C. § 512(g)(2), YouTube did not replace or cease disabling Underwood's videos after receiving his counter notice. Instead, YouTube disregarded Section 512(g)(2) and informed Underwood that his counter notice would not be honored and that YouTube was unable to "mediate," suggesting that he secure legal counsel. YouTube's correspondence is attached as Exhibit D.

26. Underwood told Shakespeare by the Sea about the takedown notice. Shakespeare by the Sea sent him a letter assuring him that Shakespeare by the Sea did not use any works by defendant in creating the recorded performances and had never heard of defendant or seen his purported "translations." In fact, Shakespeare by the Sea, like many Shakespeare theater companies around the world, creates scripts for its performances by reviewing printed Shakespeare texts that are in the public domain. Shakespeare by the Sea's letter is attached as Exhibit E.

27. On July 12, 2024, Underwood's colleague Whitten emailed defendant to ask for proof that the Shakespeare Play Recordings infringed his copyright. Whitten also asked defendant whether he held "rights over all [Shakespeare] plays." Whitten explained that, because of defendant's claims, they had "privatized [removed from public access] all Shakespeare plays on our channel" and that doing so "has upset our community, as we have received numerous emails requesting reinstatement" because the plays are "part of long-standing traditions for some families and are used by K-12 teachers and even college faculty as educational resources." The email and subsequent replies are attached as Exhibit F.

28. In an email response on the same day, defendant did not provide any evidence of infringement. Instead, he claimed that he "own[ed] rights over all [Shakespeare] plays now" and that "[b]ased on having that claim, your video was found by information matching those plays." And based on this contention, defendant suggested that he was entitled to be paid a five percent royalty for use of Shakespeare's plays. He directed Underwood to the website "William Shakespeare Playwright" (which appears at https://www.williamshakespeareplaywright.org), where defendant is selling "playright [sic]" licenses for upwards of $249.99 Canadian dollars. *See* Exhibit F.

29. On July 15, 2024, responding to defendant's claims that defendant owned rights to all of Shakespeare's plays, Whitten stated that "our understanding [is] that Shakespeare's plays are in the public domain." In the same email, Whitten asked defendant again if defendant had "specific knowledge that the productions we recorded were appropriated from your versions by the Shakespeare by the Sea producers? How do you know they used your translations or adaptations?" *See* Exhibit F.

30. Defendant replied by email that same day but again provided no evidence or reason to conclude that Underwood's videos in any way infringed defendant's copyright. Instead, defendant stated that his "copyright claim a the [sic] US government paperwork, states the previous claim to mine was what you might call the standard version," and "[t]herefore, any claim Shakespeare is public domain is false as fact." Defendant also wrote that "[y]ouy [sic] videos state they are performing based on texts in relation to claim above, just as indicating your [sic] allowed based on public domain is in fact incorrect."

31. Whitten emailed yet again on July 28, 2024, and asked, for the third time, for "specific proofs that your copyrighted adaptations were used by Shakespeare by the Sea, and then recorded by us" and implored defendant to "[p]lease help us understand the specifics of your claims."

32. Defendant replied on August 8, 2024, and, once more, provided no evidence that Underwood or Shakespeare by the Sea had in any way used or infringed on his purported copyrighted "translations" of Shakespeare's public domain plays. *See* Exhibit F.

33. If a YouTube channel incurs too many valid copyright strikes, the owner of the channel is considered a repeat infringer under 17 U.S.C. § 512(i)(1)(A). That owner's entire YouTube account is then subject to termination.

34. To protect his YouTube channel from possible termination as a result of further misrepresented and unfounded copyright claims by defendant, Underwood removed from his YouTube channel the other recordings of Shakespeare performances that he had posted. This removal was a significant loss to his channel because these recordings were central to his platform and its mission. After Underwood took down the recordings, viewers of Underwood's content, both local and national, bemoaned no longer having access to these resources.

35. After Underwood retained counsel who spoke with representatives of YouTube about the wrongful takedowns, YouTube finally honored Underwood's DMCA counter notices and forwarded them to defendant. Defendant did not file an infringement action against Underwood. YouTube has now restored the two recordings to public view.

36. Underwood has not restored the remaining 17 recordings of Shakespeare performances to his channel. Underwood fears that defendant may submit additional DMCA copyright takedown notices on those recordings, based on defendant's erroneous but unretracted claims that he "own[s] rights over all [Shakespeare's] plays now" and that defendant's copyright registration effectively takes the plays out of the public domain.

37. Underwood is concerned that additional misrepresented takedown notices from defendant will result in further copyright strikes and possible termination of Underwood's YouTube channel.

38. Underwood is not alone in being targeted by defendant's unfounded takedown notices based on defendant's purported copyright in Shakespeare's works.

39. On information and belief, a Shakespeare company in St. Marys, Kansas, the Flint Hills Shakespeare Festival, also had its recording of an *Othello* performance removed from YouTube pursuant to the same February 2024 DMCA notice from defendant that took down Underwood's videos.

40. The Flint Hills Festival has indicated that it is similarly worried that it will be exposed to future DMCA copyright claims by defendant, resulting in possible strikes on its YouTube account.

41. On information and belief, defendant's February 2024 DMCA takedown notice to YouTube also targeted recordings of student performances of Shakespeare posted on the YouTube channel of Rice University's drama department. YouTube removed these videos and, even after a counter notice, did not restore them for months, until the university retained outside counsel who communicated with counsel at YouTube.

42. Although some of the videos listed in defendant's February 2024 DMCA takedown notice have been restored to public view, others have not. Instead, the pages for these still-removed videos now say: "Video unavailable. This video is no longer available due to a copyright claim by Julien Coallier."

> Video unavailable
>
> This video is no longer available due to a copyright claim by Julien Coallier

43. Defendant has submitted additional DMCA takedown notices based on his supposed "translations" of Shakespeare, in addition to the February 2024 notice that targeted Underwood and others. For example, on December 19, 2023, and May 24, 2024, defendant sent two DMCA takedown notices to Google that claimed that 57 separate print works containing Shakespeare's plays infringed his copyright.

44. Section 504.2 of the Copyright Office's Compendium of Practices provides that, "[o]rdinarily, a registration for a work of authorship only covers the material that is included in the deposit copy(ies). It does not cover authorship that does not appear in the deposit copy(ies), even if the applicant expressly claims that authorship in the application."

45. On information and belief, including an examination of a copy of the deposit copy provided to plaintiff's counsel by the U.S. Copyright Office, defendant did not supply the Copyright Office with his supposed translations of *The Taming of the Shrew* and *All's Well That Ends Well,* nor of any of Shakespeare's 33 other plays besides *Antony and Cleopatra* and *A Midsummer Night's Dream.*

# FIRST CAUSE OF ACTION
# DECLARATORY RELIEF

46. A justiciable and actual controversy exists by way of defendant's submission of a DMCA notice to YouTube and his contentions (1) that he owns a copyright in all of Shakespeare's plays, (2) that any performances of those works or audio or video recordings of those performances infringe his copyright, and (3) that he is entitled to removal of those performances unless Underwood, or others posting such recordings, pay him a fee. Despite explanations by Whitten that Shakespeare's plays are in the public domain, and repeated requests that defendant justify his copyright claims, defendant has not backed away from those claims. Underwood remains at risk of further DMCA takedown notices, termination of his YouTube account as a result of such takedown notices, and possible copyright lawsuits by defendant.

47. The Shakespeare Play Recordings do not infringe defendant's copyright because neither Shakespeare by the Sea nor Underwood copied defendant's work in connection with those performances.

48. Underwood is entitled to declaratory judgment that he is not infringing, has not infringed, and is not liable for infringing any valid copyright owned by defendant based on the posting of recordings of Shakespeare by the Sea performances to his YouTube channel.

# SECOND CAUSE OF ACTION
# 17 U.S.C. § 512(f) MISREPRESENTATION

49. The Shakespeare Play Recordings do not infringe any copyright owned by defendant.

50. In defendant's February 19, 2024, notification of claimed infringement, defendant knowingly and materially misrepresented that the two videos posted by Underwood were infringing. The Shakespeare Play Recordings were based entirely on Shakespeare's works in the public domain and were not based in any way on defendant's purported "translations."

51. Defendant's takedown notification of the Shakespeare Play Recordings claimed infringement upon "[a]ll Shakespeare [p]lays," rather than upon his "translations" of these plays. Likewise, although defendant's copyright Certificate of Registration plainly lists his purported ownership of "Shakespeare Translated Taming of the Shrew" and "Shakespeare Translated All's Well That Ends Well," he cites the original play titles—*The Taming of the Shrew* and *All's Well That Ends Well*—as the copyrighted works that Underwood infringed.

52. In the notification of claimed infringement, defendant knowingly and materially misrepresented that he was the owner, or agent of the owner, of the exclusive right that he alleged was being infringed. Defendant does not own the exclusive rights to "[a]ll Shakespeare [p]lays."

53. On information and belief, defendant had actual subjective knowledge that the Shakespeare Play Recordings did not infringe any copyright owned by defendant.

54. In the alternative, on information and belief, defendant subjectively believed that there was a high probability that the Shakespeare Play Recordings were non-infringing at the time he sent the infringement notices. Defendant took deliberate actions to avoid learning of this fact.

55. As a direct result of defendant's takedown notice, YouTube removed the Shakespeare Play Recordings from Underwood's channel and subjected his account to a copyright strike.

56. By knowingly and falsely materially misrepresenting that Underwood's posted videos were infringing, defendant violated 17 U.S.C. § 512(f).

57. As a direct and proximate result of defendant's actions, Underwood has been injured substantially and irreparably. Such injury includes, but is not limited to, the time and expenses associated with responding to the claim of infringement; and the time and expenses associated with removing other videos from his YouTube channel.

58. As a result of defendant's violation of 17 U.S.C. § 512(f), plaintiff Underwood is entitled to an award of damages as well as attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff Underwood prays for relief against defendant as follows:

A. Declare that the posting of recordings of Shakespeare by the Sea performances to Underwood's YouTube channel did not infringe and does not infringe any valid copyright owned by defendant;

B. Refer to the Copyright Office the question whether defendant's registration of the copyright in 37 works by Shakespeare should be cancelled, pursuant to 17 U.S.C. § 411(b)(2);

C. Award plaintiff Underwood's costs and attorney's fees against defendant pursuant to 17 U.S.C. § 512(f), other portions of the Copyright Act, including Section 505, or as otherwise allowed by law; and

D. Grant such other or further relief as allowed by law and the Court deems appropriate.

Respectfully submitted,

DATED: February 4, 2025

PUBLIC CITIZEN LITIGATION GROUP

By:   /s/ Paul Alan Levy
(*pro hac vice* application to be filed)

JUELSGAARD INTELLECTUAL PROPERTY AND INNOVATION CLINIC

By:   /s/ Phillip R. Malone

FERGUSON CASE ORR PATERSON LLP

By:   /s/ Corey A. Donaldson

**JURY TRIAL DEMANDED**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Local Rule 38-1, Plaintiff John Underwood hereby demands a trial by jury of any and all issues triable of right by a jury pursuant to the Seventh Amendment to the United States Constitution or as given by a statute of the United States.

Respectfully submitted,

DATED: February 4, 2025

PUBLIC CITIZEN LITIGATION GROUP

By:   /s/ Paul Alan Levy
(*pro hac vice* application to be filed)

JUELSGAARD INTELLECTUAL PROPERTY AND INNOVATION CLINIC

By:   /s/ Phillip R. Malone

FERGUSON CASE ORR PATERSON LLP

By:  /s/ Corey A. Donaldson

COMPLAINT